CINCINNATI BAR ASSOCIATION *v*. ZINS.

[Cite as *Cincinnati Bar Assn. v. Zins,*
116 Ohio St.3d 1, 2007-Ohio-5263.]

(No. 2007–1110—Submitted August 14, 2007—Decided October 10, 2007.)

**Per Curiam.**

{¶ 1} Respondent, Robert L. Zins of Cincinnati, Ohio, Attorney Registration No. 0072110, was admitted to the practice of law in Ohio in 2000. On June 30, 2006, we suspended respondent's license to practice pursuant to Gov.Bar R. V(5)(A)(4) upon receiving notice of his felony conviction. See *In re Zins,* 110 Ohio St.3d 1404, 2006-Ohio-3307, 850 N.E.2d 67.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we now suspend respondent's license to practice for two years, with no credit for the time that respondent has already served under suspension, based on findings that he has been convicted of one count of identity fraud in violation of R.C. 2913.49(B)(1), a felony of the fourth degree. On review, we agree that respondent committed illegal and dishonest acts in violation of the Code of Professional Responsibility and that a two-year suspension is appropriate.

{¶ 3} Relator, Cincinnati Bar Association, charged respondent in a single-count complaint with violations of DR 1–102(A)(3) (prohibiting a lawyer from engaging in illegal conduct involving moral turpitude) and 1–102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Respondent answered the complaint, admitting all allegations of fact and misconduct. A panel of the board heard the cause and, based on extensive stipulations and respondent's testimony, found the cited misconduct and recommended the two-year suspension. The board adopted the panel's findings and recommended sanction.

{¶ 4} Respondent has not objected to the board's report.

Misconduct

{¶ 5} Respondent attended law school after graduating from college and working in other fields for over ten years. He has two children for whom he has

had to pay child support since his marriage ended in 1998 while he was still in law school. After law school, respondent worked as an editor for LexisNexis and as a customer-service representative for Citibank. In establishing a home with his then fiancée, he incurred large debts.

{¶ 6} By the summer of 2005, respondent could not meet his child-support obligations or pay his bills. He was working at that time for a Citibank branch in Kentucky and came up with a plan to use his position to take advantage of information on bank customers to steal money. Respondent opened a bank account in one customer's name and applied for a credit card using the customer's identity. He also accessed bank records to change another customer's address to a vacant apartment near his home and to order checks for delivery there. By drafting two or three checks from that customer's account and using a debit card to access the other customer's account, respondent stole a total of $1,236. Respondent also tried to use the vacant apartment and a post office box as addresses at which to obtain credit cards from two other customers, but he was caught before he could do so.

{¶ 7} In August 2005, before respondent had a chance to steal any more money through this process, Citibank discharged him. His thefts came to the attention of a local Kentucky prosecutor, who apparently offered to forgo criminal charges if respondent made restitution. With the help of his lawyer and the prosecutor's office, respondent repaid $1,000.

{¶ 8} The Hamilton County, Ohio, prosecutor's office, however, charged respondent with one count of identity fraud. Respondent pleaded guilty to that offense and paid another $236 in restitution. In May 2006, respondent was sentenced to two years of community control and 100 hours of community service.

{¶ 9} After his discharge from Citibank and before his conviction, respondent practiced law, primarily preparing wills and trusts for clients' estate planning. He reported his conviction to relator, and since then, he has completed his community service. As of the April 26, 2007 hearing date, however, respondent had not finished the community-control part of his sentence and was still subject to an 18–month term of imprisonment for any violation of his community control.

{¶ 10} Respondent stopped practicing after our suspension order and took an industrial job as a production supervisor until he was laid off. Since his suspension, respondent has had some of his debts discharged through bankruptcy. He now works in a delicatessen and is making payments on his child-support arrearage.

{¶ 11} We agree with the board's finding that respondent's conviction of identity theft manifests violations of DR 1–102(A)(3) and (4).

## Sanction

{¶ 12} A lawyer who commits crimes related to theft "violates the duty to maintain personal honesty and integrity, which is one of the most basic professional obligations owed by lawyers to the public." *Disciplinary Counsel v. Bein*, 105 Ohio St.3d 62, 2004-Ohio-7012, 822 N.E.2d 358, ¶ 13. Ethical lapses of this kind are harmful not only to the lawyer's victims but also to the legal profession, "which is and ought to be a high calling dedicated to the service of clients and the public good." Id. We have therefore disbarred lawyers who have been convicted of felony theft offenses or related offenses. See, e.g., *Cincinnati Bar Assn. v. Blake*, 100 Ohio St.3d 298, 2003-Ohio-5755, 798 N.E.2d 610 (felony theft and forgery convictions warranted disbarment); *Cincinnati Bar Assn. v. Banks* (2002), 94 Ohio St.3d 428, 763 N.E.2d 1166 (attorney convicted of interstate transportation of stolen laptop computers disbarred for violations of DR 1–102(A)(3), (4), and (5)).

{¶ 13} In determining the appropriate sanction, however, we also weigh the aggravating and mitigating factors of respondent's case. See Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). The board found only one aggravating factor—that respondent acted dishonestly and out of self-interest. BCGD Proc.Reg. 10(B)(1)(b). As mitigating factors, the parties stipulated and the board found that respondent had no prior disciplinary record, had made full restitution, and had cooperated fully in the disciplinary proceedings. BCGD Proc.Reg. 10(B)(2)(a), (c), and (d). The board also accepted as genuine respondent's expressions of remorse.

{¶ 14} We agree that these mitigating factors exist, that they outweigh the single aggravating factor, and, therefore, that disbarment is not required. We share the board's concern, however, that respondent carefully executed a plan that compromised bank customers until he was caught. The legal profession abhors such conduct. We thus accept the recommendation for a two-year suspension without credit for the suspension time that respondent has already served and thereby ensure that he will finish his court-ordered sentence before he is permitted to apply for reinstatement to the Ohio bar.

{¶ 15} Respondent is therefore suspended from the practice of law in Ohio for two years, with the suspension to commence on the date of our order. Costs are taxed to respondent.

Judgment accordingly.

PFEIFER, LUNDBERG STRATTON, LANZINGER, and CUPP, JJ., concur.

MOYER, C.J., and O'CONNOR and O'DONNELL, JJ., dissent.

MOYER, C.J., dissenting.

{¶ 16} In view of respondent's conduct, I would suspend his license indefinitely. As a part of his indefinite suspension, he would be prohibited from petitioning for reinstatement for two years following the court's order, pursuant to Gov.Bar R. V(10)(B), and required to meet the more stringent reinstatement requirements outlined in Gov.Bar R. V(10)(C). The mitigating factors stipulated by the parties in this case—respondent's lack of a prior disciplinary record, his payment of restitution, and his cooperation during disciplinary proceedings—do not and cannot offset the seriousness of respondent's conduct. The respondent executed a fraudulent plan that provided him with long-term access to bank customers' financial profiles. He was able to do so because he occupied a position of trust. As this court has noted, the practice of law is a privilege accorded to attorneys who have demonstrated their integrity and reliability. In the present case, the respondent has demonstrated the opposite. I would therefore suspend the respondent's license indefinitely and require him to submit a formal petition for reinstatement, as required by Gov.Bar R. V(10)(C). For the foregoing reasons, I respectfully dissent.

O'CONNOR, J., concurs in the foregoing opinion.

---

O'DONNELL, J., dissenting.

{¶ 17} The conduct engaged in by respondent threatens the hard-working citizens in our state who are unwittingly exposed to identity theft and financial loss by a person in a position of trust. This type of individual is not fit to practice law and represent such citizens. It is the responsibility of this court to police the legal profession. Rather than readmit this respondent after a hiatus of only two years, I would impose an indefinite suspension, thereby making reentry conditioned on proven worthiness. Accordingly, I dissent.

---

Beth Silverman, for relator.

Robert L. Zins, pro se.